# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CHRISTINA M. SANFORD, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO.: 2:17-CV-239-TLS-APR |

## OPINION AND ORDER

Plaintiff Christina M. Sanford seeks review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court finds that remand is required.

## PROCEDURAL BACKGROUND

On November 20, 2013, Plaintiff protectively filed an application for disability insurance benefits. AR 160, ECF No. 10. On December 3, 2013, Plaintiff protectively filed an application for supplemental security income. *Id.* 162. In both applications, Plaintiff alleged disability beginning May 12, 2012, and later amended her onset date to October 30, 2013. *Id.* 160, 162, 176. The claims were denied initially and on reconsideration. *Id*. 71, 82. Plaintiff requested a hearing, which was held before the Administrative Law Judge (ALJ) on March 22, 2016. *Id*. 15, 32, 104, 107. On April 5, 2016, the ALJ issued a written decision and found Plaintiff not disabled. *Id.* 15–27. On May 26, 2017, Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision and remand for further proceedings.

Plaintiff filed an opening brief [ECF No. 15], the Commissioner filed a response brief [ECF No. 16], and Plaintiff filed a reply brief [ECF No. 19].

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 30, 2013, the amended alleged onset date. AR 17.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Here, the ALJ determined that Plaintiff has the severe impairments of bipolar disorder, social anxiety disorder, schizoaffective disorder, and marijuana abuse. AR 17.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 12.03, 12.04, 12.06, and 12.09. AR 18.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is capable of performing simple, repetitive, routine tasks. She cannot work at a production rate pace or meet strict quota requirements, but will meet all end-of-day goals. She can tolerate occasional interaction with supervisors, coworkers, and members of the general public.

AR 19.

After assessing the RFC, the ALJ moves to step four and determines whether the claimant can do her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff is unable to perform any past relevant work under 20 C.F.R. §§ 404.1565, 416.965. AR 31.

3

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). Here, the ALJ found that Plaintiff is not disabled because Plaintiff can perform significant jobs in the national economy of bench assembler, electronics worker, and production assembler. AR 26. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512, 416.912.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478

F.3d 836, 841 (7th Cir. 2007) (same). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

**ANALYSIS**

In this appeal, Plaintiff presents four arguments in support of remand—the ALJ erred in weighing the opinion evidence; the ALJ failed to formulate an RFC that accounts for Plaintiff's

5

moderate limitations in concentration, persistence, and pace; the ALJ did not properly weigh Plaintiff's subjective complaints; and the ALJ failed to address the vocational expert's testimony regarding employers' low tolerance for absences. The Court finds that remand is required for the ALJ to properly weigh the opinion evidence of the treating sources as well as the state agency reviewing doctors.

In arguing that the ALJ failed to properly evaluate the opinion evidence, Plaintiff argues that the ALJ erred in declining to give controlling weight to the opinions of treating psychiatrist Dr. Dobransky and treating therapist Mr. Ladowicz. Plaintiff reasons that the ALJ failed to apply the regulatory factors and failed to offer legally insufficient reasons for the weight assigned to the opinions. Plaintiff also contends that it was error to give great weight to the opinions of the state agency physicians. The Court considers each argument in turn.

The treating physician rule, applicable in this case,[1] provides that the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (explaining that, under the "treating physician rule," the opinion of a treating physician "that is consistent with the record is generally entitled to 'controlling weight'"). If an ALJ does not give the treating physician's opinion controlling weight, the ALJ must apply the factors set forth in the regulations to determine what other weight to give the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Yurt v.*

---

[1] On January 18, 2017, the Commissioner published new regulations, "Revisions to Rules Regarding the Evaluation of Medical Evidence," which addressed 20 C.F.R. §§ 404.1527 and 416.927. However, the new regulations only apply to claims filed on or after March 27, 2017, and the claims in this case were filed in 2013.

*Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (requiring an explicit discussion of certain § 404.1527(c)(2) factors on remand). The factors are whether there is an examining relationship; whether there is a treatment relationship, and if so, the length of the relationship, the frequency of examination, and the nature and extent of the relationship; whether the opinion is supported by relevant evidence and by explanations from the source; the consistency of the opinion with the record as a whole; whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1127).

In this case, Dr. Dobransky, Plaintiff's treating psychiatrist, completed a Mental Medical Source Statement (MSS) on March 17, 2016. AR 486–91. Therein, Dr. Dobransky gave a diagnosis of schizoaffective disorder and a GAF score of 50. *Id*. 486. In the lines following the topic "Treatment and response," Dr. Dobransky wrote: "She is improved and stable on current regimen, without [many] side effects to meds." *Id.*[2] Dr. Dobransky listed Plaintiff's medications as Abilify, Depakote, and Vistaril, with the medication side effect of "mild sedation." *Id.* He identified Plaintiff's signs and symptoms as anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; thoughts of suicide; blunt, flat, or inappropriate affect; generalized persistent anxiety; mood disturbance; persistent

---

[2] It appears that the ALJ read this difficult-to-read handwritten note to say "without *any* side effects to meds." *See* AR 23. However, such a reading would not be consistent with the answer to the next question on the MSS form regarding medications, where Dr. Dobransky indicated that Plaintiff experiences the medication side effect of "mild sedation." AR 486.

7

disturbances of mood or affect; apprehensive expectation; paranoid thinking or inappropriate suspiciousness; emotional withdrawal or isolation; bipolar syndrome with a history of episodic periods manifested by full symptomatic picture of both manic and depressive symptoms; and hallucinations or delusions. *Id*. 487.

Dr. Dobransky then opined that Plaintiff is "unable to meet competitive standards" for more than half of the "mental abilities and aptitudes needed to do unskilled work," specifically the following: remember work-like procedures; carry out very short and simple instructions; maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. *Id.* 488. Dr. Dobransky also opined that Plaintiff is "seriously limited, but not precluded" in the following categories: understand and remember very short and simple instructions, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in a routine work setting. *Id.* All of these are abilities to do work-related activities on a day-to-day basis in a regular work setting. *Id.*

When asked to explain these limitations and provide medical/clinical findings in support, Dr. Dobransky wrote: "She has ongoing hallucinations and paranoia, which would make dealing with the public (or customers) difficult. Also she would not likely be able to assimilate instructions from managers into her work efforts." *Id.* When asked to describe the clinical

8

findings that demonstrate the severity of Plaintiff's mental impairment and symptoms, Dr. Dobransky listed poor motivation, panic attacks, paranoia, and ongoing hallucinations of voices. AR 486. He also indicated that, "while overall improved, these are still present." *Id*. He gave her a prognosis of "fair/guarded." *Id*. In another section of the MSS, Dr. Dobransky indicated that Plaintiff would find the following stressful: speed, deadlines, working within a schedule, working with other people, dealing with the public (strangers), dealing with supervisors, being criticized by supervisors, getting to work regularly, and remaining at work for a full day. *Id.* 490. Dr. Dobransky also noted that Plaintiff has a very low tolerance for conflict. *Id*.

In weighing Dr. Dobransky's opinion, the ALJ noted the diagnosis of schizoaffective disorder with a GAF of 50 and the notation that Plaintiff was "improved and stable on current medications." *Id.* 23. The ALJ stated that Plaintiff did not have "any side effects to medication," *id.*; however, Dr. Dobransky indicated on the MSS the medication side effect of "mild sedation," *id.* 486. The ALJ then found that this "statement of stability" was in conflict with Dr. Dobransky's opinion that Plaintiff was unable to meet competitive standards in many of the tasks for unskilled, semiskilled, and skilled work, listing the various mental abilities identified by Dr. Dobransky (which the Court listed above). *Id.* 23–24. The ALJ noted Dr. Dobransky's explanation that Plaintiff had ongoing hallucinations and paranoia that would make dealing with the public difficult. *Id.* 24. Finally, the ALJ declined to give the opinion controlling weight and instead give it "little weight," finding that Dr. Dobransky's "very restrictive limitations are inconsistent with his earlier statement in the same medical source statement that the claimant was improved and stable on her treatment regimen." *Id.* The ALJ also found Dr. Dobransky's opinion

9

to be inconsistent with his own treatment records, which the ALJ described as "consistently indicat[ing] that the claimant was functioning well with increased activities and was stable." *Id.*

As argued by Plaintiff, the ALJ's reasons for giving little weight rather than controlling weight to Dr. Dobransky's opinion are not supported by substantial evidence. First, as to the conclusion regarding inconsistency within the MSS and with treatment records, the ALJ did not identify any evidence of record to give context to the meaning of "improved" and "stable" as those terms were used by Dr. Dobransky. Findings of improvement and stability in and of themselves do not offer insight into an ability to work nor do they constitute an evaluation of work-related functions. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2015) (reasoning that characterizations that the claimant is medically improving and "neurologically stable" "do not given us an accurate description of [the claimant's] true neurological state"). To say that someone has improved indicates only that the person is doing better than before and offers no insight into the prior or current condition. And to say that someone is stable indicates only that the person's condition is not changing without qualification of that condition. The meaningful inquiry is the actual condition of Plaintiff's impairments and the resulting limitations, and the ALJ offers no analysis of the evidence in this context. *Id*. ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled.").

The Court recognizes that, earlier in the decision, the ALJ discussed Dr. Dobransky's treatment records. But the portions of those records discussed by the ALJ do not appear to conflict with Dr. Dobransky's March 2016 MSS opinion. First, the ALJ recognized that, in September 2013 (before Plaintiff's amended alleged onset date), Plaintiff was admitted to the

10

hospital for six days due to psychosis and agitation. AR 21. The ALJ noted that Plaintiff was not taking psychotropic medications at the time of her admission and discussed other aspects of the hospitalization record, including the GAF score of 30-35 and that Plaintiff was stabilized enough for discharge once she was compliant with medications. *Id.* The ALJ then summarized Plaintiff's treatment records with Dr. Dobransky, beginning with the initial treatment on October 1, 2013. AR 21. The ALJ included Dr. Dobransky's notation that Plaintiff had mild circumstantiality of process on exam but that she denied delusions or hallucinations; the diagnosis of bipolar disorder, most recent manic with psychosis and marijuana abuse; the GAF score of 55; prescriptions of Depakote, Trazodone, and Klonopin; and the recommendation for therapy. *Id*. The ALJ gave the GAF score of 55 great weight as consistent with the longitudinal evidence showing improvement of Plaintiff's mental health symptoms with treatment. *Id*.

The ALJ then noted the treatment records of April 2014, June 2014, and August 2014, and December 2015. AR 22. The ALJ summarized the records during that 15-month period as showing that Plaintiff "continued to do well and was stable." *Id.* The ALJ noted that, in April 2014, Plaintiff reported being nervous about the future but was otherwise good and that Dr. Dobransky found no suicidal ideation, grandiosity, or auditory hallucinations but some paranoia; a GAF of 55; and medication adjustments. *Id*. (citing AR 374–76). The Court notes that, in April 2014, Plaintiff reported that she was "passive in some areas of her life like socializing and looking for work," was worried about being able to hold down a job, and suffered from some paranoia or delusion. AR 376. The ALJ noted that, in June 2014, Plaintiff reported that things were going well and that she had been more active socially and felt stable, but a "little bit" of paranoia and delusions. AR 22 (citing AR 377). The ALJ noted that, in August 2014, Plaintiff

was functioning well, with Dr. Dobransky adding a diagnosis of rule out schizoaffective disorder and changed Risperdal to Seroquel. AR 22 (citing AR 379–80).

The ALJ noted that, after Dr. Dobransky switched Plaintiff's medication to Seroquel in August 2014, Plaintiff did not report any psychotic symptoms until December 2015. *Id.* However, the March 2015 record shows that Plaintiff stated that she was "working on getting into a day program" and that her medication, Seroquel, "knocks me out." AR 387. This is consistent with Dr. Dobransky's notation on the MSS form that the side effect of her medication was "mild sedation." AR 486. In May 2015, Plaintiff reported that she had signed up for a day program and her energy was "on and off." AR 389. In July 2015, Dr. Dobransky noted that Plaintiff took her mother shopping once a week, played with her dog, and did chores. AR 391. At the appointment in October 2015, Plaintiff reported that she spent her time drawing, watching television, and being with her dog. AR 393. However, in December 2015, Plaintiff described to Dr. Dobransky that her mood would swing up and down, and she presented with a blunted affect. AR 395. Dr. Dobransky also noted that Plaintiff described "paranoid ideation and disconnection from reality at times independent of mood exacerbation, suggesting schizoaffective d/o." *Id.*

None of the activities of daily living reported by Plaintiff appear to conflict with Dr. Dobransky's opinion that Plaintiff is unable to perform many of the mental abilities to sustain full-time, competitive work. The activities of watching television, completing basic chores, shopping once a week, drawing, and playing with her dog do not undermine an inability to work forty hours a week in a competitive work environment. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). And, in the context of weighing Dr. Dobransky's opinion, the ALJ

12

did not specify which of these activities were inconsistent with Dr. Dobransky's opinion. In completing the MSS, Dr. Dobransky, a psychiatrist, identified various functional areas in which Plaintiff was limited based on his assessment over a long and regular treatment record. The ALJ has not explained how Dr. Dobransky's opinions are inconsistent with the treatment records.

Moreover, Dr. Dobransky made the comment on the first page of the MSS that Plaintiff was "improved and stable on current regiment" yet nevertheless went on to opine, in the same document, as to Plaintiff's many limitations. In that context, Dr. Dobransky specifically noted that, "while overall improved," Plaintiff's poor motivation, panic attacks, paranoia, and ongoing hallucinations of voices "are still present." AR 486. This explanation specifically links the statement of "improved and stable" to the inability to perform certain mental abilities for unskilled work. The ALJ did not discuss this statement or show how it was unsupported by the record.

As for Plaintiff's argument that the ALJ did not weigh the regulatory factors, the ALJ appears to have acknowledged most of the factors, noting that Dr. Dobransky was a treating psychiatrist and considering the treatment records over the course of the relationship from October 2013 through March 2016, as discussed above. AR 21–23. However, the ALJ does not explain how he applied those factors in weighing the March 2016 opinion. That Dr. Dobransky was a specialist (a psychiatrist) and had a long treating relationship with Plaintiff would seem to weigh in favor of assigning greater weight to the opinion rather than discounting it. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (remanding because the ALJ, in giving "little weight" to the treating physician opinion and giving "significant weight" to the state agency

consultants' opinions, did not mention any of the regulatory factors when the treating physician was a psychiatrist and had treated the plaintiff's schizophrenia for a year and a half).

Finally, Dr. Dobransky's opinion was consistent with the opinion of treating therapist Mr. Ladowicz, whose opinion the ALJ also gave "little weight." AR 24. Mr. Ladowicz, a Licensed Clinical Social Worker with credentials of ACSW (Academy of Certified Social Workers) and QMHP (Qualified Mental Health Professional) treated Plaintiff from February 2013 through January 2016. AR 343–52, 399–78, 480–85. On March 12, 2016, Mr. Ladowicz also completed an MSS and opined that Plaintiff was unable to meet competitive standards in the same categories of mental ability and aptitudes needed to do unskilled work as identified by Dr. Dobransky. *Id.* 482. Mr. Ladowicz indicated that Plaintiff "is making slow progress with some signs of improvement. Remains dysfunctional in social and occupational functioning." *Id.* 480. He also explained that Plaintiff has "difficulty functioning in social situations" and that "[a]lthough positive symptoms of psychosis have improved negative symptoms persist (lack of motivation, lack of interest in pleasurable activities)." *Id.* In giving this opinion little weight, the ALJ summarized the opinion, but offered no explanation other than the statement, "While the undersigned agrees that some of the claimant's depressive and anxiety symptoms continue, the evidence as a whole does not support Mr. Ladowicz's [opinions]." *Id.* 24. Once again, the ALJ does not identify the records that are inconsistent with Mr. Ladowicz's opinion. Notably, the consistency between Dr. Dobransky's opinion and Mr. Ladowicz's opinion, which are based on longitudinal treatment records, would tend to support giving each opinion great weight if not controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4) (indicating that supportability and consistency favor more weight to an opinion).

The ALJ's decision not to give Dr. Dobransky's opinion controlling weight on the basis that it was internally inconsistent and inconsistent with other evidence in the record is not supported by substantial evidence and remand is required for the ALJ to provide a sufficient explanation based on substantial evidence of record.

As for the "great weight" the ALJ gave to the February and July 2014 opinions of state agency reviewing doctors Dr. Hill and Dr. Shipley, Plaintiff argues that the weight was improper because Drs. Hill and Shipley did not have an opportunity to review the treatment records of Dr. Dobransky and Mr. Ladowicz through early 2016. Because the case is being remanded, the ALJ will have an opportunity to consider and explain whether updated state agency opinions are warranted or whether different weight should be given to the state agency opinions. *See, e.g.*, *Meuser*, 838 F.3d at 912 (criticizing the ALJ's reliance on state agency physicians who had only reviewed a fraction of the treatment records (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010))).

The Court finds that the ALJ's reconsideration of the opinion evidence on remand may also directly affect the ALJ's consideration of Plaintiff's moderate limitations in concentration, persistence, and pace, *see* AR 18, which is the basis of Plaintiff's second argument for remand. In formulating the mental RFC, the ALJ relied heavily on the mental residual functional capacity assessed by Drs. Hill and Shipley. AR 23. In the narrative portion of the form, they opined that, although Plaintiff's attention and concentration are moderately impacted, she can understand, remember, and carry out simple tasks, can relate on a superficial level and an ongoing basis with co-workers and supervisors, can attend to a task for a sufficient period of time to complete the task, and can manage the stresses involved with simple work. *See* AR 68, 79. And, the ALJ

15

incorporated in the RFC limitations to simple, repetitive, and routine tasks and occasional interaction with supervisors, coworkers, and members of the general public. AR 19.

However, earlier on the form, Drs. Hill and Shipley also found that Plaintiff was moderately limited in the ability to carry out detailed instructions, to complete a workday or workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 67–68, 78–79. The ALJ did not discuss these limitations in formulating the RFC or explain how the RFC accounts for these limitations. *See* AR 23; *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[I]n *Yurt*, we explicitly rejected the argument that we should be unconcerned . . . with the failure of the ALJ to mention the six areas where [the state psychologist] found moderate limitations because the narrative portion of the form adequately translated these limitations into a mental RFC that the ALJ could reasonably adopt." (quoting *Yurt*, 758 F.3d at 858 (internal quotation marks omitted))).

The Court recognizes that the RFC includes an additional condition that Plaintiff "cannot work at a production rate pace or meet strict quote requirements, but will meet all end-of-day goals." AR 19. It is not clear how this limitation takes into account Plaintiff's moderate limitation in concentration, persistence, or pace or her moderate limitation in the ability to perform at a consistent pace without an *unreasonable* number and length of rest periods. As noted by Plaintiff, the court in *Novak v. Berryhill* considered an identical RFC limitation and found that the limitation

> is vague and unsupported by any medical opinion. It is vague because the ALJ did not explain the underlying logic. Presumably, although the Court is not entirely sure, the ALJ is envisioning a tortoise-and-the-hare scenario in which plaintiff would be unable to keep pace consistently throughout the day but could somehow

16

> catch up later in the day. If so, there is nothing in the record to suggest that plaintiff, despite his slow processing speed, had unusual bursts of productive energy . . . .

No. 15 CV 50236, 2017 WL 1163733, at *7 (N.D. Ill. Mar. 29, 2017). Like in *Novak*, the ALJ offered no explanation for how this limitation accommodates Plaintiff's specific impairments, and there is nothing in the record in this case to suggest that Plaintiff would either be able to plan ahead and get all her work done at the beginning of the day or catch up at some other time of the day. Although the RFC is an administrative determination, it must nevertheless be based on the evidence of record, and the ALJ must explain his reasoning. *See* 20 C.F.R. §§ 404.1546(a)(3), 416.946(a)(3); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (discussing Seventh Circuit law on incorporating moderate limitations in concentration, persistence, and pace in the RFC); *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (finding the ALJ made no effort to build an accurate and logical bridge between plaintiff's moderate limitations in concentration, persistence, and pace and the RFC).

On remand, in reweighing the medical opinions, the ALJ will have an opportunity to address these aspects of the mental RFC and explain how the limitation of no rate pace work or quota requirements accommodates Plaintiff's moderate limitations in concentration, persistence, and pace as supported by the record. The ALJ will also have the opportunity to better explain how Plaintiff's subjective allegations are not supported by the record and to address, if appropriate, the vocational expert's testimony regarding an employer's tolerance for missing work.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in Plaintiff's Brief [ECF No. 15], REVERSES the decision of the Commissioner of the Social Security Administration, and REMANDS for further proceedings consistent with this Opinion.

SO ORDERED on March 17, 2020.

                                s/ Theresa L. Springmann
                                CHIEF JUDGE THERESA L. SPRINGMANN
                                UNITED STATES DISTRICT COURT